UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
BRICKLAYERS INSURANCE AND
WELFARE FUND, et al.,

                             Plaintiff,

  -against-                              **MEMORANDUM & ORDER**
                                                       16-CV-6935 (PKC)(JO)

JOB OPPORTUNITIES FOR WOMEN, INC.,
HARTFORD FIRE INSURANCE COMPANY,
IGNAZIO MINUCCI, and SUE MINUCCI,

                             Defendants.
-------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       Plaintiffs Bricklayers Insurance and Welfare Fund, Bricklayers Pension Fund, Bricklayers Supplemental Annuity Fund, Bricklayers and Trowel Trades International Pension Fund, New York City and Long Island Joint Apprenticeship and Training Fund, International Masonry Institute, Jeremiah Sullivan, Jr., Bricklayers Local 1, International Union of Bricklayers and Allied Craft Workers, and Bricklayers Labor Management Committee (collectively, "Plaintiffs"), bring this action against Defendants Ignazio Minucci and Sue Minucci (the "Minucci Defendants") and Job Opportunities for Women, Inc. ("JOW") (collectively, "Defendants"), alleging violations of Sections 404, 409, and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA") and Section 301 of the Labor Management Relations Act ("LMRA"), as well as conversion under New York common law. Before the Court is Plaintiffs' motion for summary judgment. For the reasons stated below, Plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

I. **Relevant Facts**[1]

Plaintiffs Bricklayers Insurance and Welfare Fund ("Welfare Fund"), Bricklayers Pension Fund ("Pension Fund"), Bricklayers Supplemental Annuity Fund ("Annuity Fund"), Bricklayers and Trowel Trades International Pension Fund ("IPF"), New York City and Long Island Joint Apprenticeship and Training Fund ("JATC"), and International Masonry Institute ("IMI") (collectively, the "Funds") are each an "employment benefit plan within the meaning of Section 3(3) of ERISA, a "multiemployer plan" within the meaning of Section 3(37) of ERISA, and a "fiduciary" within the meaning of Section 3(21)(A) of ERISA. (Plaintiffs' 56.1 Statement ("Pls'. 56.1"), Dkt. 41-4, ¶ 1 & n.1.) Plaintiff International Union of Bricklayers and Allied Craft Workers Local 1 of New York ("Local 1") is a "labor organization" within the meaning of Section 301 of the LMRA. (*Id.* ¶ 1.) Defendant JOW is a construction company owned by Defendant Sue Minucci. (*Id.* ¶ 26.) Defendant Ignazio Minucci worked at JOW. (*Id.* ¶ 23.)

Defendant JOW is a party to a collective bargaining agreement ("CBA") with Local 1, which requires JOW to assign all masonry work it undertakes to perform in New York City and Long Island to Local 1 bricklayers. (*Id.* ¶¶ 2–3.) All Local 1 signatories are subject to periodic

---

[1] Defendants have failed to file the required Rule 56.1(c) statement in opposition to Plaintiffs' motion for summary judgment. Federal Rule of Civil Procedure 56.1(c) requires a party opposing summary judgment to file a Rule 56.1 statement. "When the opposing party fails to respond to the moving party's Rule 56.1 Statement, the material facts contained in the moving party's statement are deemed admitted as a matter of law." *Antwi v. Health & Human Sys. (Ctrs.) F.E.G.S.*, No. 13-CV-835 (ER)(FM), 2014 WL 4548619, at *4 (S.D.N.Y. Sept. 15, 2014); *see also Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998). However, "a district court must ensure that there is support in the record for facts contained in unopposed Rule 56.1 statements before accepting those facts as true." *United States v. Abady*, No. 03-CV-1683 (SHS), 2004 WL 444081, at *3 (S.D.N.Y. Mar. 11, 2004) (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140–43 (2d Cir. 2003)). Therefore, the Court only cites to those portions of Plaintiffs' 56.1 Statement that the Court finds are supported by the record. The facts therein will be deemed admitted.

audits, at the request of the Funds, to determine whether any contributions are owed to the Funds, Local 1, and/or the Labor Management Committee ("LMC"). (*Id.* ¶¶ 7, 32–33.) In December 2016, Plaintiffs' accountants audited JOW's payroll records for the period from January 1, 2015 through June 30, 2016 (the "Audit Period") and discovered substantial delinquency in unpaid contributions[2] and unremitted dues checkoffs.[3] (*Id.* ¶¶ 8, 34; Dkt. 41-7.)

## II. Procedural History

Plaintiffs filed this action on December 15, 2016. (Dkt. 1.) On June 5, 2018, Plaintiffs and then-Defendant Hartford Fire Insurance Company, which supplied the labor and materials payment bond for one of JOW's construction projects, entered into a stipulation of settlement. (Dkt. 38; Complaint ("Compl."), Dkt. 1, ¶¶ 13, 43–46.) Plaintiffs' motion for summary judgment against the remaining Defendants was filed on July 20, 2018. (Dkt. 41.)

## LEGAL STANDARD

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient

---

[2] JOW is obligated to pay contributions at specified rates per hour to pay the cost of: (1) pension benefits provided by the Pension Fund, Annuity Fund, and IPF; (2) medical benefits provided by the Welfare Fund; and (3) training provided by the JATC and IMI. (Pls.' 56.1 ¶ 5.)

[3] "Dues checkoffs" refers to money that an employer is obligated to pay into various employee-related funds or to the union. *Newspaper Guild/CWA of Albany v. Hearst Corp.*, 645 F.3d 527, 528 (2d Cir. 2011). For example, JOW is obligated to transmit after-tax hourly deductions from employee wages to a component of the Welfare Fund that provides vacation benefits to bricklayer participants by having after-tax dollars deducted from their paychecks by their employer (the "Vacation Fund"). (Pl.'s 56.1 ¶ 6; Declaration of Jeremiah Sullivan ("Sullivan Decl."), Dkt. 41-2, ¶ 16.) JOW is also required to remit union dues to Local 1 and its parent, the International Union of Bricklayers & Allied Craft Workers. (Pls.' 56.1 ¶ 6.)

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted; alteration in original). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation omitted).

In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

## DISCUSSION

Plaintiffs move for summary judgment as to their claims for: (1) unpaid contributions

pursuant to LMRA Section 301 and ERISA Sections 1132 and 1145 (against JOW); (2) unremitted dues checkoffs pursuant to LMRA Section 301 (against JOW); and (3) breach of fiduciary duty pursuant to ERISA Section 409 (against the Minucci Defendants). Plaintiffs are not moving for summary judgment as to their state law conversion claim.

Defendants JOW and Ignazio Minucci do not dispute their liability. (Affidavit of Ignazio Minucci ("Minucci Aff."), Dkt. 43, ¶¶ 23–24.)[4] However, Defendant Sue Minucci disputes her personal liability and all Defendants dispute Plaintiffs' damages calculation. In light of Defendants' concessions, the Court will only address Plaintiffs' claims with respect to Sue Minucci's liability for breach of fiduciary duty and Plaintiffs' damages calculation.

### I. Breach of Fiduciary Duty Claim (against Sue Minucci)

Under ERISA, a fiduciary is "someone who exercises any discretionary authority or discretionary control respecting management of [an ERISA benefit] plan or exercises any authority or control respecting management or disposition of its assets." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015) (citing 29 U.S.C. § 1002(21)(A)). To establish the personal liability of a fiduciary, a plaintiff must show "both that (1) the unpaid contributions were plan assets and (2) [the defendant] exercised a level of control over those assets sufficient to make him [or her] a fiduciary." *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009). "Congress intended ERISA's definition of fiduciary to be broadly construed," *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (citation and internal quotation marks omitted); however, the Second Circuit has held "that even where an individual . . . was an officer of a company, . . . was 'authorized to sign checks on the Company's account,'

---

[4] As discussed *infra*, Defendants have not submitted a memorandum of law in opposition to Plaintiffs' motion for summary judgment, only the Minucci Affidavit.

5

and . . . 'had some general knowledge that deductions were made from employees' wages,' he still was not an ERISA fiduciary because he had 'no responsibility for determining which of the company's creditors would be paid or in what order.'" *Finkel v. Romanowicz*, 577 F.3d 79, 86 (2d Cir. 2009) (quoting *LoPresti*, 126 F.3d at 40); *see also LoPresti*, 126 F.3d at 40 ("Of equal if not more import . . . is that, as the district court found, [the defendant] had a role in determining which bills to pay, in that he decided which creditors were to be paid out of the Company's general account (which, during the relevant time frame, included employee Fund contributions), and when those creditors were to be paid.") (internal quotation marks omitted).

Defendants do not dispute that, pursuant to the CBA, the delinquent contributions are plan assets. (Pls.' 56.1 ¶¶ 12–17; Plaintiffs' Brief ("Pls.' Br."), Dkt. 41-1, at 10.) Therefore, the first factor is satisfied. With respect to the second factor, Plaintiffs argue that Sue Minucci exercised authority and control over plan assets because: (1) the Minucci Defendants were "the decision makers regarding JOW's finances and ha[d] final authority and control over disposition of the Funds' plan assets"; (2) the Minucci Defendants were the only representatives from JOW who "exhibited the authority to make decisions regarding payment of monies to the Funds"; (3) Sue Minucci contacted representatives of Local 1 and the auditors "to challenge Plaintiffs' previous demands for payment, and [] refused to submit contributions and dues to the Funds for any disputed hours"; (4) Sue Minucci executed the CBA memorandum of agreement on behalf of JOW; (5) the Minucci Defendants had joint authority over JOW's bank account; (6) Sue Minucci signed the certified payroll reports for one of JOW's construction projects, which employed Local 1 bricklayers, verifying that wages and benefits had been paid on behalf of JOW's employees;[5] and

---

[5] However, the records provided by Plaintiffs indicate that they were signed by a "Maria Minucci." (Dkt. 41-14.) Plaintiffs have made no representations regarding whether Sue Minucci and Maria Minucci are the same person.

(7) JOW obtained its certification as a woman-owned business by attesting that JOW is owned, operated, and controlled by Sue Minucci.[6] (Sullivan Decl. ¶¶ 18, 20–21, 23–27.) In response, Defendant Ignazio Minucci states that he was solely responsible for "decid[ing] who got paid, when and how much," and that his wife was only JOW's owner and bookkeeper. (Minucci Aff. ¶¶ 2, 4–6, 17–18, 20.)

The Court finds that there is a genuine dispute of material fact as to whether Sue Minucci had "responsibility for determining which of the company's creditors would be paid or in what order" such that she can be considered a fiduciary under ERISA. *Finkel*, 577 F.3d at 86–87 (finding defendant "was simply an officer of [the company]" where "he signed checks on the company's behalf, and . . . maintained plan assets," but did not "select investments[,] exchange one instrument for another[,] . . . was [not] responsibl[e] for determining which of the company's creditors would be paid or in what order, . . . or otherwise enjoy[ed] authority or control over the management of [the] Plan assets"). The objective evidence Plaintiffs put forth demonstrating Sue Minucci's authority—such as emails between her and the Funds' representatives regarding the outstanding debts, or records of payments she made to the Funds on JOW's behalf—is ambiguous as to whether it demonstrates that Sue Minucci determined which creditor going to be paid and could be consistent with the Minucci Defendants' claim that Sue Minucci was only JOW's owner and bookkeeper. With respect to the remaining evidence, such as the declarations from the Funds' administrators asserting, *inter alia*, that Sue Minucci has final authority and direct control over disposition of the Funds' plan assets (*see, e.g.*, Sullivan Decl. ¶ 18), "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

---

[6] Similarly, the certification states that the owner of JOW is Maria Minucci. (Dkt. 41-15.) However, the email address provided for Maria Minucci is sue.minucci@jofw.com. (*Id.*)

7

facts are jury functions, not those of a judge," *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007) (quoting *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150–51 (2000)) (emphasis omitted). Therefore, Plaintiffs' motion for summary judgment is denied as to their breach of fiduciary duty claim against Sue Minucci.[7]

## II.  Damages Calculation

In their summary judgment motion, Plaintiffs state that JOW owes $113,065.84 to the Funds in unpaid benefit contributions and $14,339.85 to Local 1 and the LMC in unremitted wage deductions and contributions for hours worked by Local 1 bricklayers during the Audit Period, as well as 10% yearly interest and 20% liquidated damages under the terms of the CBA. (Pls.' 56.1, ¶¶ 36, 39, 42.)  Plaintiffs also allege that the Minucci Defendants, due to their role as fiduciaries, are both personally liable to the Funds and Local 1 for $88,371.87 of the principal amount owed by JOW, plus interest and liquidated damages. (*Id.* ¶¶ 10–11, 37–38; Plaintiffs' Brief, Dkt. 41-1,

---

[7] Plaintiffs argue that the Court should disregard the Minucci Affidavit because "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion." *Bacchus v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 225 (E.D.N.Y. 2015); (Plaintiffs' Reply Brief, Dkt. 42, at 4–5.)  However, the "sham affidavit" rule applies where "factual allegations . . . are made for the first time in the [non-moving party's] affidavit opposing summary judgment *and* that affidavit contradicts [the non-moving party's] own prior deposition testimony." *Jin Dong Wang v. LW Rest., Inc.*, 81 F. Supp. 3d 241, 259 (E.D.N.Y. 2015) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)) (emphasis added).  This principle "does not apply . . . if the statements 'are not actually contradictory,' or 'the later sworn assertion addresses an issue that was not thoroughly or clearly explored [before].'" *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 213 (2d Cir. 2014) (quoting *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000)) (alteration omitted).  In this case, no deposition testimony was taken and Plaintiffs do not assert that the Minucci Affidavit contradicts any prior sworn statements by Defendants.  And while it is true that "[t]he timing of an affidavit can subject it to greater scrutiny [because] [a]fter its adversary has briefed a summary judgment motion, a party is better able to craft an affidavit that addresses any highlighted evidentiary gaps," the factual dispute addressed in the Minucci Affidavit was highlighted during the pre-motion conference and is not a "surprise attack." *McQueen v. Huddleston*, No. 13-CV-302 (LJV), 2018 WL 661413, at *3 (W.D.N.Y. Feb. 1, 2018); (Dkt. 32).

at 1.)[8]  However, since the filing of Plaintiffs' motion, the parties have agreed that Plaintiffs' $70,000 settlement with Defendant Hartford regarding the unpaid benefit contributions and unremitted wage deductions from the Fratello project (described below) should be deducted from Plaintiffs' claims for compensatory damages (but not interest or liquidated damages).  (Dkt. 45.)

By contrast, Defendants Ignazio Minucci and JOW argue that they are only liable for $32,063.16 in unpaid contributions, as well as the corresponding interest and liquidated damages. (Minucci Aff. ¶ 11.)  According to the Minucci Affidavit, the unpaid contributions are based on five different construction jobs, which, for clarity's sake, the Court will identify using the name of the General Contractor: (1) Fratello Construction Corporation ("Fratello"), (2) Arnell, (3) Posillico, (4) WDF Inc., and (5) C&L Contracting Corporation ("C&L").  (*Id.* ¶ 9.)  As noted, Plaintiffs' settlement with Hartford satisfied the principal owed for the Fratello project.  However, Defendants also assert that they made two payments, totaling $51,007.57, for the C&L and Arnell projects, and which Plaintiffs failed to consider in determining Defendants' unpaid balance.  (*Id.* ¶¶ 10, 12; *see also* Dkt. 41-16; Dkt. 43-1; Dkt. 43-3.)  Plaintiffs did not respond to Defendants' argument in their reply brief.  Therefore, the Court finds that there is a genuine dispute of material fact as to the damages owed by Defendants in excess of $32,063.16.

## CONCLUSION

For the reasons stated herein, Plaintiffs' motion for summary judgment is granted in part and denied in part.  Based on Defendants' concessions, Plaintiffs' motion is granted as to (1) Defendant Ignazio Minucci's liability for breach of fiduciary duty; (2) Defendant JOW's liability for unpaid contributions and unremitted dues checkoffs; and (3) Plaintiffs' entitlement to at least

---

[8] It is unclear from Plaintiffs' motion how the Minucci Defendants' contribution was calculated.

$32,063.16 in compensatory damages.

The following claims shall proceed to trial: (1) breach of fiduciary duty (against Defendant Sue Minucci); (2) state law conversion (against the Minucci Defendants); and (3) damages in excess of $32,063.16 (against all Defendants). The Court shall calculate the amount of interest and liquidated damages owed to Plaintiffs at the conclusion of the proceedings.

SO ORDERED.

/s/*Pamela K. Chen*
PAMELA K. CHEN
United States District Judge

Dated: Brooklyn, New York
      January 28, 2019